IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS R. LAZARDE, SR., et al., | : | |
|     Plaintiffs | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 10-5139 |
| | : | |
| CITY OF READING, et al., | : | |
|     Defendants | : | |

# M E M O R A N D U M

**STENGEL, J.**                                                                 September 28, 2012

      Luis Lazarde and his wife, Abigail Lazarde, contend that a Reading police officer, Christopher Cortazzo, intentionally ran over Mr. Lazarde's foot with his police cruiser. Mr. Lazarde claims that he was subsequently summoned to the police station to answer questions about an unrelated assault case and was "roughed up" by Angel Cabrera, another Reading police officer. The City of Reading moves for partial summary judgment on Count II, a derivative *Monell* claim against the City, and Counts IV and V for false imprisonment and intentional and negligent infliction of emotional distress, to the extent those counts are asserted against the City. For the following reasons, I will grant the defendants' partial motion for summary judgment.

## I.     BACKGROUND

      Pursuant to my policies and procedures, the defendants filed a separate, short, and concise statement of material facts containing numbered paragraphs. My policies and procedures require the party opposing a motion for summary judgment to include "a separate, short, and concise statement of the material facts, responding to the numbered paragraphs set forth" by the defendants. The plaintiffs suggest that they "dispute the

facts set forth in Defendant's 'Statement of Relevant Undisputed Facts In Support of Defendant's Motion for Summary Judgment.' So the facts are not 'undisputed.'" Pls.' Br. in Opp'n at 3.  However, the plaintiffs do not respond to the numbered paragraphs in the defendants' statement of undisputed facts.  The plaintiffs failed to follow my policies and procedures.

Instead, the plaintiffs reference their amended complaint which "details the facts of this matter" and incorporate the amended complaint by reference.  Id. at 3.  The nonmoving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings.  See Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999).  My policies and procedures require "references to the parts of the record" that support the statement of material facts.  Plaintiffs' "statement of facts" on page three of their brief contains three short paragraphs without a single reference or citation to the record.  Pls.' Br. in Opp'n at 3.  Furthermore, the unsupported "facts" contained only on page 3 of the plaintiffs' brief are not even relevant to the *Monell* claim at issue in the City's motion.

Federal Rule of Civil Procedure 56(e)(2) allows me to consider the defendants' statement of uncontested facts undisputed because the plaintiffs failed to properly address the defendants' assertions of fact as required by Rule 56(c).  Accordingly, because the plaintiffs failed to follow the Federal Rules of Civil Procedure and my own policies and procedures, for purposes of this motion, I will accept as true the defendants' statement of

undisputed material facts attached as Exhibit A to its motion for partial summary judgment.[1]

### A. The Allegations in the Plaintiffs' Amended Complaint

This suit arises from two alleged incidents. On October 6, 2008, Mr. Lazarde alleges that defendant Officer Christopher Cortazzo purposely ran over Mr. Lazarde's foot with his police cruiser after the two men had a disagreement.[2] A second incident occurred on December 5, 2008, when Mr. Lazarde alleges he was "roughed up" by defendant Officer Angel Cabrera while being questioned by Officer Cabrera at the Reading Police Station about a recent stabbing that had occurred.[3] The plaintiffs assert multiple state and federal claims against Officer Cortazzo and Officer Cabrera.[4] The plaintiffs also assert a derivative *Monell* claim against the City and state tort law claims against the City.

### B. Citizen Complaints and Internal Affairs[5]

The City of Reading has an Internal Affairs Department that investigates complaints against police officers, makes recommendations regarding the merits of the complaints, and if warranted, imposes discipline and/or additional training. In the 21 years prior to the December 5, 2008, incident, Officer Cabrera, who has handled

---

[1] For future reference, plaintiffs' counsel is advised to consult my policies and procedures, available at http://www.paed.uscourts.gov/documents/procedures/stepol.pdf
[2] Officer Cortazzo denies this assertion but the defendants acknowledge that there remain factual disputes that preclude moving for summary judgment on the threshold claims stemming from this incident.
[3] Officer Cabrera also denies this assertion but the defendants acknowledge that there are factual disputes that preclude moving for summary judgment on the threshold claims stemming from this incident, as well.
[4] By agreement of the parties, the plaintiffs dismissed all claims against defendant Officer Reichart.
[5] The facts are gleaned from the defendants' statement of material undisputed facts, attached as Exhibit A to its motion for summary judgment. As discussed previously, the plaintiff has failed to dispute these facts and I will accept them as true.

3

thousands of arrests, has been the subject of only a handful of complaints, none of which were similar to the misconduct plaintiffs allege here and none of which were sustained as having any merit.[6]  Officer Cabrera has received extensive training, numerous awards, thank you letters from citizens, and accolades from the Reading Police Department and other law enforcement agencies.

In the 17 years prior to the October 6, 2008, incident, Officer Cortazzo, who has handled thousands of arrest, has been the subject of some complaints, none of which were similar to the misconduct plaintiffs allege here and only one of which was sustained has having any merit.[7]  Officer Cortazzo also has received extensive training, numerous awards, thank you letters from citizens, and accolades from the Reading Police Department and other law enforcement agencies.

The Internal Affairs Department investigated all citizen complaints made against Officers Cabrera and Cortazzo, as well as other officers.  The Reading Police Department has instituted discipline when the complaints were sustained and where discipline was appropriate.  When Mr. Lazarde filed an Internal Affairs complaint against Officer Cortazzo on October 14, 2008, regarding the alleged incident that occurred on October 6, 2008, the Internal Affairs Department investigated the complaint by conducting interviews of Mr. Lazarde and his proffered witnesses, taking photographs, and requesting any pertinent medical records that Mr. Lazarde claimed supported his

---

[6] The defendant provided the plaintiffs with copies of Officer Cabrera's personnel files and Internal Affairs Complaints and Investigations against him; however the plaintiffs have not referenced these or attached them to their response for summary judgment.
[7] The defendant also provided the plaintiffs with copies of Officer Cortazzo's personnel files and Internal Affairs Complaints and Investigations against him; however the plaintiffs again have not referenced these or attached them to their response for summary judgment.

complaint.  At the conclusion of this investigation, Internal Affairs concluded that Mr. Lazarde's claim was "not sustained."  The Reading Police Department defines a "not sustained" complaint as one without enough evidence to prove or disprove the allegation.  Out of an abundance of caution, Internal Affairs nevertheless recommended that Officer Cortazzo seek counseling from his platoon supervisors about his interactions with the public and how to properly document all of his contacts with the public.  The plaintiff did not file a complaint with Reading Police Department's Internal Affairs Department about the December 5, 2008, incident with Officer Cabrera.  Accordingly, no investigation was undertaken or warranted.

### C. There Are No Prior Findings of Police Misconduct by Any Reading Police Officers

Although the City of Reading has been the subject of lawsuits alleging police misconduct in the past 10 years, there has not been a single finding by a jury that any officer has violated a citizen's civil rights or that the City of Reading has a custom, practice, or policy of condoning or permitting civil rights violations.  To the contrary, when presented with such claims, juries have rejected them as without merit and courts have dismissed them on summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to

5

be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

A party moving for summary judgment always bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. The nonmoving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999). Rather, the nonmoving party must present clear evidence from which a jury can reasonably find in its favor. Id. Finally, in reviewing a motion for summary judgment, the court does not make credibility

determinations and must view facts and inferences in the light most favorable to the party opposing the motion. Siegel Transfer v. Carrier Express, 54 F.3d 1125, 1127 (3d Cir. 1995).

## III. DISCUSSION

### A. Plaintiffs Fail to Establish a Factual Basis for Their *Monell* Claim

Even if the Lazardes could establish that a constitutional violation has taken place under § 1983, the Lazardes fail to present any evidence to raise a genuine issue as to the existence of a policy, custom, or practice responsible for the alleged deprivation of constitutional rights. Monell v. Department of Social Services, 436 U.S. 658, 690-95, (1978). The defendants acknowledge that the plaintiffs' claim that Mr. Lazarde was deprived of a constitutional right is a disputed issue of fact. Assuming, *arguendo*, that a violation occurred, in order to recover from a municipality under § 1983, the Lazardes must: (1) identify a policy or custom that deprived her of a federally protected right, (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury. Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

A municipal policy, for purposes of § 1983, is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); see also Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) (policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official

7

proclamation, policy, or edict).  Such a policy generally implies a course of action consciously chosen from among various alternatives.  Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).  Limiting liability to identifiable policies ensures that municipalities are only liable for "deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."  Bd. of the County Comm'rs v. Brown, 520 U.S. at 403-04.

     A custom, while not formally adopted by the municipality, may lead to liability if the "relevant practice is so widespread as to have the force of law."  Id. at 404. This requirement will not be construed so broadly as to circumvent Monell: "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . ."  Oklahoma City, 471 U.S. at 823-824.

     Alternatively, a plaintiff can also allege a Monell claim "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  City of Canton v. Harris, 489 U.S. 378, 387-88 (1989) (for liability to attach under a failure to train theory, a municipality's failure to train its employees must reflect a deliberate or conscious choice by the municipality such that one could call it a policy or custom).  In order for a municipality's failure to train to be actionable under § 1983, however, it must amount to "deliberate indifference" to the rights of the persons with whom police officers come into contact, and it must be shown to be a part of city policy.  Id. at 389-390.  To establish the requisite "deliberate indifference," there must be proof of "a pattern of underlying constitutional violations."  Carswell v. Borough of

Homestead, 381 F.3d 235, 244 (3d Cir. 2004).  The plaintiffs "must also show that 'a reasonable municipal policymaker had knowledge of prior incidents or knowledge of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question.'"  Cacciatore v. City of Phila., 2005 U.S. Dist. LEXIS 19064, *1, *6 (E.D. Pa. Sept. 1, 2005) (quoting Garcia v. County of Bucks, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001).  A plaintiff who pursues a § 1983 claim "must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivation occurred."  Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).

     Here, Mr. and Mrs. Lazarde have produced no evidence that Reading has, with deliberate indifference, enacted an official policy of permitting or encouraging its police officers to violate the constitutional rights of individuals.  The plaintiffs allude that the "Police Chief and the Mayor, were both aware of such violations, but either deliberated chose not to pursue alternatives or acquiesced in a long standing policy or custom of inaction in this regard" Pls.' Br. in Opp'n at 3.  The plaintiffs offer no evidence in support of this bold assertion except for two affidavits attached to their response that supposedly "demonstrate that high officials of the City of Reading knew at (sic) least one (1) year prior to the Lazarde incidents that it was a common practice to ignore citizen complaints (sic) or not follow up on them in a proper fashion." Pls.' Br. in Opp'n at 3.  Contrary to the plaintiffs' assertion, the attached affidavits do not establish that Reading officials commonly ignored citizens' complaints.

Even accepting these complaints as valid—which the defendants deny—one complaint does not establish "a pattern of constitutional violations." Cheryl Bolig's "Complaint," as attached to Plaintiffs' Opposition Brief, reports that Cheryl Bolig, then a married woman, had an extra-marital affair with Brian Galvin, a suspect in a murder investigation. Bolig's complaint is that Cabrera and detectives from *another* police department spoke harshly to her over the course of the investigation of murder, in which Galvin was a suspect. She concludes by stating that she called Internal Affairs, spoke with Officer Weidner, and was informed that she could come in and make a statement. Her 'Complaint,' page 6, ¶ 18, indicates that she never followed up and filed a complaint with the City, a fact that is confirmed by the City's records.

Jacqualene Bolig's complaint—which is uniquely written in the third person—alleges that Officer Cabrera and another detective spoke harshly to her, as he had done to her mother, and that she made a complaint to Officer Weidner who referred her to Sergeant Lehman. Jacqualene Bolig informed Sergeant Lehman that she wanted Officer Cabrera "to leave her alone." Page 2, ¶ 7. There are no facts in the record showing that there have been any further interactions between Officer Cabrera and Jacqualene Bolig in the intervening four years.

The plaintiffs' evidence consists solely of two attached complaints of a mother and daughter, the former of whom was an alleged alibi witness in a murder investigation. Together, the complaints show (1) that Officer Cabrera spoke harshly to the Boligs, and (2) that Cheryl Bolig never filed an actual complaint and Jacqualene Bolig requested that she be left alone, which she apparently was. This evidence, which is all the plaintiff has

10

presented,[8] falls woefully short of what is required to sustain a Monell claim. The plaintiffs have not shown that a reasonable municipal policy maker had knowledge of a pattern of prior incidents or knowledge of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question. The Bolig complaints do not establish a pattern of prior abuses and are not similar to the alleged misconduct by Lazarde because the Bolig complaints allege verbal abuse while Lazarde alleges physical abuse. Furthermore, the complaints were not ignored. To the contrary, one complaint was never filed and the other was remedied to the complainant's satisfaction, as she was no longer "bothered" by Officer Cabrera during the course of a murder investigation. The plaintiffs have produced no evidence of a single incident, much less a pattern of misconduct to which the City was "deliberately indifferent" that is necessary to support their Monell claim against the City. Therefore, I will enter judgment in favor of the City of Reading and against the plaintiffs on Count II of the plaintiffs' amended complaint.

### B. Plaintiffs' State Law Claims Fails as a Matter of Law

The plaintiff asserts state law claims against the City of Reading for false imprisonment (Count IV) and intentional/negligent infliction of emotional distress (Count V). Except for certain negligent acts, the City is immune from suit under the Pennsylvania Political Subdivisions Tort Claims Act for the intentional torts of its police officers. See Agresta v. City of Phila., 694 F.Supp. 117, 123-24 (E.D. Pa.1988). The Act provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be

---

[8] I use the term "presented" loosely as the plaintiff has simply attached two affidavits to her response and made almost no effort to explain the affidavits in her brief in opposition to the motion.

liable for any damages on account of any injury to a person or property caused by an act of the local agency or an employee thereof or any other person." 42 PA. CONS. STAT. ANN. § 8541. The eight exceptions to this grant of immunity are for acts of negligence in the areas of (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. 42 PA. CONS. STAT. ANN. § 8542. The defendants contend that none of the narrow exceptions of the PSTCA apply, and therefore, the plaintiffs' state law claims against the city are barred. Mr. Lazarde's claim against the city for false imprisonment certainly does not fall into any of these exceptions and, as asserted against the City, fails as a matter of law. The plaintiff does not oppose the entry of summary judgment for the City on the state law claims, as they have not even responded to the motion on these counts. Therefore, I find that the City is immune from plaintiffs' state law claims raised against them in Counts IV and V.

## IV.  CONCLUSION

Based upon the foregoing, I will grant the defendants' motion for partial summary judgment.

An appropriate Order follows.